UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **KIRSTEN SOLONIEWICZ** | : | |
| | : | **Civil Action No.** |
| **Plaintiff** | : | |
| | : | |
| V. | : | |
| | : | |
| | : | |
| **SUGAR FOX 218, LLC** | : | |
| | : | |
| **Defendant** | : | **JUNE 10, 2022** |

## COMPLAINT

### I.   INTRODUCTION

1. Employers must not retaliate in terms and conditions of employment and/or terminate employees who complain about violations of state or federal wage laws. 29 U.S.C. Sec. 215(a)(3); *Reilly v. Quick Care Med., P.C.*, 2014 WL 2571642 (D.N.J. June 6, 2014) (denying motion to dismiss FLSA retaliation claim where plaintiff filed wage complaint with state DOL).

2. Here, Defendant Sugar Fox 218, LLC reduced the number of shifts its employee, Kirsten Soloniewicz, was assigned to work after learning she filed a complaint with the Connecticut Department of Labor about the tip pooling restaurants in its restaurants. Defendant restored her to her normal amount of shifts after receiving a letter from her counsel.

3. Defendant Sugar Fox then terminated Plaintiff's employment three months after her counsel deposed a witness attempting to obtain evidence that Lloyd Sugarman, the owner of Sugar Fox, was an individual employer in Mr. Sugarman's presence while a motion to cite him into the lawsuit was pending.

1

4. Defendants' willful violation of the FLSA's anti-retaliation provision has cost Plaintiff thousands of dollars in lost back wages both before and after her termination, liquidated damages, and attorneys' fees.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 since these claims arise under federal law.

6. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the acts or omissions giving rise to the claims in this Complaint took place in this district.

## III. PARTIES

7. Plaintiff, Kirsten Soloniewicz is individual residing in Florida.

8. Defendant Sugar Fox 218, LLC is a limited liability company organized under the laws of the State of Delaware with a principal place of business located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

## IV. FACTS

9. Defendant Sugar Fox 218, LLC employed Plaintiff primarily as a server in its Foxwoods Sugar Factory American Brassiere restaurant from June 27, 2018 through June 13, 2020.

10. During the summer of 2019, Plaintiff filed a complaint with the Connecticut Department of Labor regarding Sugar Fox's policy requiring its servers to tip out other employees in the restaurant.

11. After Plaintiff filed her Department of Labor complaint, Sugar Fox reduced the number of shifts Plaintiff received prior to making the complaints.

12. On September 9, 2019, Defendant's owner Lloyd Sugarman received a letter from counsel accusing the restaurant of retaliating against her by reducing her shifts. At that time, Defendant learned that Plaintiff was represented by counsel.

13. Defendant restored Plaintiff to her normal shifts.

14. On October 8, 2019, Plaintiff filed a lawsuit against Sugar Fox 218, LLC in Connecticut Superior Court. *Soloniewicz v. Sugar Factory, LLC et al.*, HHD-CV-19-6118245-S ("lawsuit").

15. Plaintiff alleged, on a class-wide basis, that Sugar Fox violated Connecticut's Minimum Wage Act as to its servers, *inter alia* by 1) failing to comply with Regs., Conn. State Agencies Sec. 31-62-E3(b), 2) failing to comply with Regs., Conn. State Agencies Sec. 31-62-E3(c), and 3), assigned its servers non-service duties (called side work) in addition their service duties, but failed to segregate that time in the wage record and pay for it at the full minimum wage as required by Regs., Conn. State Agencies Sec. 31-62-E4.

16. Plaintiff alleged that Defendant violated each of these regulations as to their servers, and as a result, were ineligible to pay them the sub-minimum wage, tip credit rate.

17. The Fair Labor Standards Act has specific provisions that control when an employer can claim a tip credit relating to the assignment of non-tipped work.

18. Sugar Fox understood that Plaintiff's lawsuit challenged its legal entitlement to claim a tip credit from the wages of Plaintiff, and its servers.

19. Sugar Fox understood that Plaintiff's lawsuit alleged violations of minimum wage laws as to Plaintiff, and its servers.

20. On February 13, 2020, Plaintiff's counsel emailed Sugar Fox's counsel and proposed adding Defendant's owner Lloyd Sugarman as a defendant in the pending lawsuit.

21. On February 14, 2020, Sugarman confronted Plaintiff in the restaurant during her work shift. Sugarman told Plaintiff, among other things, that she needs to be careful, she does not know who her friends are, and that people are always watching.

22. On February 20, 2020, Plaintiff moved through counsel to cite in Lloyd Sugarman as a party defendant, and thereby make him personally responsible for those wages.

23. On February 26, 2020, Lloyd Sugarman was served with a proposed amended complaint seeking to add him to the lawsuit.

24. On March 6, 2020, Plaintiff deposed the former general manager of the restaurant, Siobhan Cappiello.

25. Lloyd Sugarman was present at Cappiello's deposition.

26. Plaintiff's counsel asked questions about Sugarman's role at the restaurant to learn whether he was an employer under the law.

27. At her deposition, she testified that the restaurant did not have a required tip out.

28. Also at her deposition, Ms. Cappiello was shown a discipline form she wrote and signed in June 2019. In this discipline form, she suspended a server named Josh Hayes for failing to claiming to claim 100% of his tips, and wrote that he "stole from the bussers + bar by not properly tipping out."

29. Mr. Hayes was not fired for this misconduct and returned to work following his suspension.

4

## VI. MARCH 7, 2020 INCIDENT AND CLOSURE OF THE RESTAURANT RESULTING FROM THE CORONAVIRUS PANDEMIC

30. On March 7, 2020, Plaintiff was involved in a disagreement with a fellow co-worker, the hostess working that shift. Following the conclusion of that discussion, Plaintiff stated, after the hostess left, that she was a "F---ing idiot." Plaintiff's direct supervisor Elizabeth Gifford heard Plaintiff's comments. ("March 7th incident")

31. Gifford did not discipline Plaintiff for her remarks.

32. On March 8, 2020, Loreal Kurtz spoke with Plaintiff about the March 7th incident.

33. Kurtz did not discipline Plaintiff for anything she did on March 7, 2020.

34. Kurtz and Plaintiff both worked on March 13, 2020.

35. Kurtz did not suspend Plaintiff on that date or otherwise issue her discipline.

36. Defendant did not intend to issue discipline to Plaintiff for the March 7th incident.

37. Indeed, on March 14, 2020, Kurtz texted Plaintiff asking "would you like to work or stay home tonight [sic]"

38. Sugar Fox closed the Foxwoods restaurant on March 16, 2020 in response to the COVID19 coronavirus pandemic.

## VI. DEFENDANT TERMINATES PLAINTIFF ON JUNE 13, 2020

39. Sugar Fox employs a schedule system called "Axial" for its employees to use to see if work is available for them.

40. On June 13, 2020 at 2:33 p.m., Plaintiff opened the Axial application on her cellphone. At 2:33 p.m., there were 87 open shifts available. At that time, Plaintiff was listed as "current" in the Server section.

41. On June 13, 2020, at 4:38 p.m., Plaintiff texted Kurtz and asked if she was going to be invited to return to work.

42. Kurtz responded shortly after: "[u]nfortunately, we are not considering you for rehire for phase 2, at this time. Best of luck in your future endeavors."

43. On June 13, 2020, at 5:16 p.m., Bookataub sent a text message to other Sugar Factory employees that stated "Kirsten has officially been told that she's not getting hired back."

44. On June 13, 2020, at 7:41 p.m., Plaintiff checked Axial again. This time, it stated in the Server Section "Terminated End 2020/06/11."

### VII. DEFENDANT LAUNCHES AN "INVESTIGATION" INTO THE MARCH 7, 2020 INCIDENT TO JUSTIFY ITS RETALIATORY DECISION TO TERMINATE PLAINTIFF ON JUNE 13, 2020

45. On June 16, 2020, Plaintiff emailed Kurtz asking for an explanation as to why she was not being returned to work.

46. In her email, Plaintiff wrote "[i]t sems to me that I am not being brought back because I filed this lawsuit against the restaurant. I know that the restaurant is not bringing back Sabrina [Pezzello], Sarah [Csefai], Josh [Hayes], and I. This group of people is very specific; Siobhan [Cappielo, the former general manager] thought all of them called the Department of Labor with complaints and concerns and in Josh Hayes' case, his suspension was brought up at Siobhan's deposition. Also, servers that were hired after the New Year and even servers that were still only in training when COVID-19 forced the closure, were invited back to work instead of people, like me, who have worked there for much longer. It feels intentional to me that the restaurant is not rehiring the five servers, including me, who it believes brought complaints against it, and returning the rest of the servers."

47. Kurtz did not respond to Plaintiff's email.

48. On June 19, 2020, Defendant attempted to undo its decision to terminate Plaintiff to try and create a record showing that Plaintiff's lawsuit was not the reason for the termination.

49. On June 19, 2020, Kurtz sent Plaintiff an email with a document attached stating that the restaurant was placing her on an "unpaid leave of absence." (hereinafter "Notice").

50. The Notice states "I am in receipt of a complaint of harassment, abuse, and the use of insensitive and/or offensive language by you and directed at a fellow employee related to an incident that occurred on or about March 7th, 2020, just prior to the shutdown resulting from the declared State of Emergency associated with the COVID19 pandemic."

51. The Notice does not state when Kurtz received this complaint.

52. The Notice states "[a]s we are just now beginning our phased reopening, we are now able to conduct a thorough investigation into the allegations."

53. The restaurant reopened on May 31, 2020 or June 1, 2020, either eighteen (18) or nineteen (19) days earlier.

54. The Sugar Factory employee handbook states on page 4 that "If you feel you have been … subject of any … harassing action … you are encouraged to report those concerns immediately so SUGAR FACTORY can take prompt action. … Any supervisor who receives a complaint of conduct that violates the SUGAR FACTORY policies detailed above must report the complaint immediately to the Human Resources Department in order to aid in the internal resolution of the claim."

55. Kurtz did not report this complaint to human resources on or about March 7, 2020.

7

56. Kurtz reported the complaint on or about June 16, 2020.

57. The Notice states "Notwithstanding such investigation, as discussed with you prior to this letter, part-time employees are generally not being returned to work during the early part of the COVID19-related phased reopening."

58. On May 24, 2020, Kurtz emailed the entire Sugar Factory staff asking for volunteers to return to work. Her email did not limit the request to full-time employees.

59. Defendant returned part-time workers before June 13, 2020.

60. On June 14, 2020, Sugar Fox 218, LLC posted an advertisement on Indeed.com looking to hire food servers.

61. The advertisement states that it is "urgently hiring."

62. The advertisement states "Job Types: Full-time; Part-time"

63. The advertisement states it is offering "30-39" hours per week.

64. The advertisement states Sugar Fox is looking to hire 5-10 new servers.

65. Sugar Fox hired a new server named Ashley Bates after terminating Plaintiff on June 13, 2020.

66. The Notice states that "the matter is being investigated by Rayna Grenon."

67. Grenon did not contact the Plaintiff to interview her regarding the March 7th incident until calling her on July 17, 2020, twenty-eight (28) days after the "investigation" began (the "interview").

68. Grenon's "interview" with Plaintiff lasted a total of 6 minutes and 32 seconds and comprised of 4-5 questions total.

69. During the interview, Plaintiff identified multiple witnesses to the event, including a server named Jemelka Vega.

70. During the interview Plaintiff asked Grenon when the March 7th incident had been brought to her attention.

71. Grenon would not answer Plaintiff's questions.

72. Plaintiff told Grenon that she had been terminated before the investigation began.

73. Grenon did not ask Plaintiff why she had been terminated, or any other follow-up questions about it.

74. Grenon did not interview Jemelka Vega after Plaintiff identified her as a witness.

75. On July 31, 2020, Plaintiff received an email from Kurtz with a termination letter attached. The letter stated: "Dear Kirsten: This letter is to notify you that your employment with Sugar Factory is terminated as of July 31st, 2020. As a result of an investigation into a complaint of abuse and/or harassment made by certain of your co-workers, it has been determined that you engaged in abusive conduct in violation of the restaurant's policies and procedures."

76. On July 31, 2020, Plaintiff emailed Kurtz stating: "1. When did send this complaint to Rayna?  2. Please send me the complaint and email you sent her.  3. Why does this say I'm fired effective 7/31/2020 when you told me in June before the investigation that I was not being considered for rehire and terminated me in Axial?"

77. Kurtz did not respond to Plaintiff's email.

**COUNT ONE:** **RETALIATION IN VIOLATION OF 29 U.S.C. SEC. 215(a)(3) FOR FILING A STATE LAW WAGE AND HOUR CLASS ACTION AGAINST DEFENDANT SUGAR FOX, 218, LLC.**

78. As described above, Defendant Sugar Fox 218, LLC's decision to terminate Plaintiff was motivated by her filing a state law class action complaint in Connecticut Superior Court alleging violations of minimum wage laws.

79. Defendant's conduct violated 29 U.S.C. Sec. 215(a)(3) which prohibits employers from discharging employees who file lawsuits to vindicate rights implicated by the FLSA.

80. Defendants' violation is a willful violation of the FLSA.

81. Plaintiff participated in protected activity known to the defendant. Plaintiff filed a state class action lawsuit alleging violations of minimum wage laws. Defendant is aware Plaintiff filed this lawsuit. It was served with process, answered the complaint, and answered discovery.

82. Plaintiff suffered an adverse employment action that disadvantaged her. Defendant terminated her employment.

83. A causal connection exists between the protected activity and the refusal to rehire. Defendant knew Plaintiff filed the lawsuit. Defendant refused to rehire Plaintiff within three (3) months of the restaurant being shut down due to the COVID-19 Pandemic.

84. As a direct and proximate result of Defendant's illegal retaliatory refusal to rehire, Plaintiff has sustained and will continue to sustain damages including but not limited to lost income, benefits, emotional distress, attorneys' fees and costs.

**COUNT TWO:** **RETALIATION IN VIOLATION OF 29 U.S.C. SEC. 215(a)(3) FOR FILING A COMPLAINT WITH THE CONNECTICUT DEPARTMENT OF LABOR.**

85. As described above, Defendant Sugar Fox 218, LLC's retaliated against Plaintiff in her terms and conditions of employment because she filed a complaint with the Connecticut Department of Labor.

86. Defendant's conduct violated 29 U.S.C. Sec. 215(a)(3) which prohibits employers from retaliating against employees who complain of violations of wage laws.

87. Defendants' retaliation against Plaintiff is a willful violation of the FLSA.

88. Plaintiff participated in protected activity known to the defendant. Plaintiff filed a complaint with the Connecticut Department of Labor regarding the restaurant's tip pooling practices.

89. Plaintiff suffered an adverse employment action that disadvantaged her. Defendant reduced the number of shifts she was assigned to work, thereby causing her lost wages.

90. A causal connection exists between the protected activity and the retaliation. Plaintiff filed the complaint on July 15, 2019 and Defendant only ended its retaliation on September 9, 2019 after receiving a letter from Plaintiff's lawyer.

91. As a direct and proximate result of Defendant's illegal retaliation, Plaintiff has sustained and will continue to sustain damages including but not limited to lost income, benefits, emotional distress, attorneys' fees and costs.

**DEMAND FOR RELIEF**

Plaintiff claims:

1. Back pay pursuant to 29 U.S.C. Sec. 216(b);

2. Liquidated damages under the FLSA pursuant to 29 U.S.C. Sec. 216(b);

3. Compensatory damages pursuant to 29 U.S.C. Sec. 216(b);

4. Emotional distress damages pursuant to 29 U.S.C. Sec. 216(b);

5. Punitive damages;

6. Attorneys' fees and costs; and

7. Such other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury for all issues so triable.

**Plaintiff, KIRSTEN SOLONIEWICZ**

By: /s/ Thomas J. Durkin
Thomas J. Durkin, Esq.
Hayber McKenna & Dinsmore, LLC
750 Main St., Suite 904
Hartford, CT 06103
(860) 522-8888 Telephone
(860) 218-9555 Facsimile
Email: tdurkin@hayberlawfirm.com
Fed. Bar. No. ct30371